Good morning ladies and gentlemen. Our first case for argument is Arias v. Lynch. Ms. Carvalho? Good morning your honors and may it please the court. Our immigration laws allow an undocumented person to seek discretionary relief based on things like family circumstances and a history of hard work and exemplary behavior and ties to the community. And there's no question that Mrs. Arias would be a strong candidate for that kind of relief. But because of a single conviction, she cannot even ask for that relief. Her only crime, her only interaction with the criminal justice system actually, is that she falsely represented a social security number to be her own so that she could work and support her family. That is her only offense and to say that that crime is inherently vile and depraved simply makes no sense. It's the board's own precedent that governs here and it tells us that this offense can't be categorically a crime involving moral turpitude. What does moral turpitude mean? I don't have any idea. Well the way the board's defined it, and this court defers to that definition, is it's conduct that's inherently base, vile, and depraved. It's more than just illegal. It's more than just prohibited. It's something that is shocking to the public conscience. Under the board's cases and under this court's cases, frankly, other than Marin Rodriguez, we see that this definition really captures some of the most offensive conduct that happens in cases. And under the board's definitions, this simply doesn't meet the test. We know that from how the board distinguishes between dishonesty and fraud. Dishonesty and fraud are different. Fraud involves inducing someone to act to his detriment. And the board has authority that distinguishes between an intent to defraud and an intent to deceive. We know it because of the difference between malum in se and malum prohibitum, which is something that is recognized in the board's cases. The statute at issue here... Do you mean by the difference between fraud and deception that fraud, you're getting money, you're actually getting something? You're getting something to the other person's detriment, harming someone. It's not simply, you know, take the example that the Second Circuit used in the Ahmed, it's an unpublished Ahmed case where it held that this very statute was not turpitudinous. If you put a sign on your house that says, I have an alarm system, well, you intend people to rely on it, and it might not be true, but your intention is not to hurt anyone. So there's a fundamental difference between something that's dishonest, even intentionally dishonest, and intentionally fraudulent. And the board's cases draw that distinction. The board's case is also distinguished between things that are wrong because they're prohibited by law and things that are inherently wrong or inherently depraved. And this case presents a really interesting problem for that distinction. This is a statute that does not appear in the criminal code at all. This statute is part of the penalties section of the Social Security Act. So we're talking about how a person, what a person says about a thing that is defined by itself in the statute, and this is in the penalties section. It seems to me to be a quintessential case of malum prohibitum rather than malum in se. Counsel, would you agree that the statute could be violated in such a way as to defraud and harm others? Correct, yes, I do agree with that. And so this takes us into the problem that the board and the attorney general have been wrestling with in the Silva Trevino case about categorical and kind of the board's variation on modified categorical and so on. First of all, has the board, to your knowledge, acted after Attorney General Holder's memorandum from earlier this year? I'm not aware of any significant decision on that issue. And can you give us your thoughts on how likely you think the board's action in that case is to affect the reasoning for this case? The reason I'm concerned is because that seems, General Holder's memo seems aimed at the third step, digging into the facts, but I'm not clear on how likely it is to affect this case. Well, it does, of course, go beyond the third step. I mean, he vacated the entire first decision. And he also said that, you know, he wants the board to revisit everything back to the beginning, including how adjudicators, quoting, how adjudicators are to determine whether a particular criminal offense is a crime involving moral turpitude. So we do start from the beginning. And, you know, the issue, I think, in the Supreme Court cases that have come out, Carachuri-Rosendo and so forth, is should we go beyond the language of the statute at all? In which case, if we're not to go beyond the language of the statute at all, then the answer to the question in this case has to be it is not a crime, categorically a crime involving moral turpitude. The mere fact that it's possible that there would be a violation under this Act that would be turpitudinous doesn't make every violation under this Act turpitudinous. And that's really what the board, you know, is saying by saying this is a statute that is categorically turpitudinous. At a minimum, we think this case should be sent back for that. What the board is being asked to do is really start over in terms of how it defines this case. Now, I'm not here to say that every case of a turpitudinous offense should be remanded in the meantime. But it seems to me at a minimum that the cases that are on the margins, and in my view, this case is well beyond the margins, the court should be open to remanding those kinds of cases while the board tries to figure out what this term means. You know, on its own, the term is pretty indefined, pretty vague, and more than ambiguous. And there's been years and years of case law as the courts and the board have tried to figure out what is and isn't turpitudinous. And it's interesting that the government's argument in this case is really based on things like exhaustion. I'm not hearing any argument from the government in its brief about why it would make sense to say that this kind of offense is categorically, inherently vile and depraved. I don't see how that makes sense. I don't see how it would make sense to apply Marin Rodriguez to a situation where you've got a statute that's in the penalties section of the Social Security Act. It's just well beyond the margins. So this is an ideal case to remand so that it could be part of the board's determination of what is and isn't turpitudinous. Can I ask you, this has to do with the government's exhaustion argument, but it seemed to me that the brief submitted to the board invited the board to follow the Ninth Circuit decision in Beltran-Torado, if I'm getting the name correctly. Should we do that? Yes, the court should do that, but you don't have to go that far. Beltran-Torado dealt with both the statute that was addressed in Marin Rodriguez and the statute that is at issue here. We think you could simply distinguish Marin Rodriguez and resolve for yourself. On very subtle lines. Well, true, but on the grounds of malum prohibitum versus malum in se, which is, frankly, an argument that was explicitly made in the brief to the board by my client. So that is a very important distinction here, and I think it is a significant one. And once you conclude that Marin Rodriguez doesn't control this case, this case should be decided based on principles about what this term means and based on the board's own precedent about what this term means. Do you have any idea where the term or the concept of moral turpitude comes from? I don't, Your Honor, honestly. I mean, frankly, turpitudinousness, which I'm not sure I've ever said aloud until now, is a pretty complicated word. But it must have some root in public morality and public sense. And I find it impossible to imagine that the public would conclude that presenting a Social Security number to be your own for the purpose of working is immoral. Counsel, we know from, if I could just ask one other question, we know from a number of other of our cases there are thriving businesses in the sale of false Social Security numbers. I suspect we would all agree that the people involved in selling those numbers are engaged in crimes involving moral turpitude. I would not argue with that. I think that's fundamentally different from this kind of situation. Help me distinguish it between the sellers and the users. Well, I think the distinguishing factor has to do with the level of intent involved. If you have a scheme that depends on the concept of fraud, you don't know how the people are going to be using the numbers. There's lots of ways to use Social Security numbers that don't cause harm to anyone. There's a lot of ways to use Social Security numbers that might cause harm to people. This is a case where the statute says for any purpose. We can't say categorically whether the purpose is going to be a purpose that would include intending harm to someone else. In this case, if you go from step one to step two, which the board had to do in order to resolve this case, we know that the conduct to which she pleaded guilty was intent to deceive in order to work, and that's all. No intent to harm. Okay. Thank you, Ms. Kelley. Mr. Stanton. May it please the Court. Petitioner in this case seeks to downplay the severity of her offense, but I would like to remind the Court that 42 U.S.C. section 408A.7b is a felony. It's punishable by five years. It is. Would it violate this statute if Ms. Arias took her sick child to a hospital to get emergency care and in checking into the hospital was asked for her Social Security number and provided a false one? I would suggest that it is, Your Honor. Would that amount to moral turpitude? I mean, as far as violating the statute is concerned, Your Honor, there may be greater philosophical differences, but as far as the law is concerned, it certainly would be. That sounds ridiculous. It would violate, I agree, it would violate 408A.7 for any purpose, but it's hard to see how that would amount to moral turpitude. I mean, there have been petitioners also convicted of section 408A, the same statute as the petitioner here in this case, who were far less blameworthy than she was, and the court found that the alien was guilty of a crime of, had convicted a crime of moral turpitude. What does moral turpitude mean? I'm sorry? What does moral turpitude mean? Moral turpitude means a crime that's, well, I believe the opposing counsel gave the legal definition that, well, I mean, except the definition, I should say, that Lincoln involves an action that is so vile, I mean, heinous, that frowned upon by society. What would be an example of a crime that is not a crime of moral turpitude? What is an example of a crime that is not a crime of moral turpitude? Jaywalking. So, I mean, like stuff that generally does not tend to shock the public conscience. Well, are there any felonies that are not crimes of moral turpitude? That I cannot imagine. Monopolization. I would imagine, like most felonies, most felonies I would imagine would not be that. Wait, I'm sorry, I don't understand you. What is an example of a felony that is not a crime of moral turpitude? What is an example of a felony that is not a crime of moral turpitude? Let me think. Let me think. What would be an example? I probably should have been. I'm not coming up with an example right now, Your Honor. How about monopolization? How about? Monopolization. Monopolization. Violations of the antitrust statutes. I would say probably not because it does not go back to the common law definition. I'm not sure if monopolization goes back to common law. Does it? No. Well, Social Security doesn't go back to the common law either. But deception does, Your Honor. Many courts have held that many courts, including this court, admittedly in unpolished opinion, had recognized that violations of 508A involved the element of the intent to deceive. Therefore, that's. . . Well, look, when you're talking about monopolization or other antitrust violations, there is very often an intent to deceive.  All right. Is that what defines moral turpitude? The case could be made. The criminal monopoly could be considered a crime involving moral turpitude, but I have just not done the research on that to give the correct answer. Well, that bothers me because I'm really troubled by this moral turpitude concept, which sounds like nonsense to me. Maybe there's some sense to it somewhere. Now, she got a $100 fine and a year's probation. Yes, that's right. Well, that makes it seem like a very minor crime. Well, she received a minor punishment, but I would not. . . Well, you usually receive a minor punishment because the judge thinks that it's a minor crime. Well, I mean, that particular judge. . . Well, so how minor can a crime be and still be a crime of moral turpitude? It's not going to. . . What if she just got the $100 fine? Would you still be arguing it was a crime of moral turpitude? I mean, if she just got the $100 fine. . . For this particular statute, yes, I would. Well, what if it was a fine of $5? Fine of $5 for the same violation of the statute. What if the judge felt sorry for her, said, as Ms. Koberly said, she needs to work. This was the only way she could get work. She needs to work, yes. So the judge feels sorry for her and says, all right, I won't bother with probation. I'll give you a $5 fine. And you say it's still a crime of moral turpitude. Yes, yes. Which sounds ridiculous to me. All right, well, I mean, there have been other. . . I've given you the most minor criminal offense I can think of. Okay, but. . . And then you say, well, monopolization, which is. . . Which causes much more harm than this. Criminal violations of the Sherman Act are usually considered pretty serious. Yes, yes, Your Honor. I would. . . But you say no to monopolization. I'm not saying that. Because it wasn't illegal at common law. It's therefore not a crime of moral turpitude. I probably mean. . . I just do not have enough background on whether or not the Sherman Act involves moral turpitude. I apologize to the Court. But my gut is a case could be made. And if an undocumented alien committed antitrust violations, yes, that person may be eligible for cancellation relief because he or she committed a crime involving moral turpitude. Well, what utility does the concept of moral turpitude have in law? What utility? Yeah. I mean. . . Why are we making these distinctions? I don't get it. You have serious crimes, heavy punishments. You have trivial crimes, light punishments. What does the concept of moral turpitude add to trying to make sensible distinctions in punishment? Deportation is actually a drastic form of punishment. So how are we supposed to distinguish between conduct that deserves heavy punishment and conduct that doesn't? One way is to look at the Court's presence. These arguments that Fisher has been making have been made before to the Court's repeal for quite a while right now. And most courts have rejected them, including this Court. Well, I don't see any reasoning in those cases. What is the reasoning that enables the Court to distinguish between a crime of moral turpitude and some felony that isn't a crime of moral turpitude? Well, I mean, I'm not recalling a specific decision that addresses Your Honor's question. But it's the critical question, right? What is a crime of moral turpitude as distinguished from another felony? From another fraud? Well, I mean, fraud itself is considered inherently wrong. And I believe this Court has said many times that, as have many other courts, that actions involving fraud, crimes involving fraud, are almost always, if not always, crimes involving moral turpitude. So just two and a half... Counsel? Yes? The problem, though, is we're being asked to draw a line between fraud that harms other people and deception that does not. Okay. And could you address that distinction? Yes. I mean, like, so long as we're talking about crimes, I mean, Ms. Crowley referred to the Second Circuit decision, which involved the Second Circuit decision where they said, well, it wouldn't be fraud for a person to put an alarm sign outside. Well, I mean, that's, as far as I know, not a crime. So this here, there's no benefit to be obtained. In this particular case, there is a benefit to be obtained. Like, the right to work in the United States. So, I mean, like, the example the Second Circuit gave, all due respect to the Second Circuit, that would be like a quarterback taking a handoff to deceive an incoming linebacker. I mean, there's no criminal action involved. Is there a victim? There's no benefit to be obtained. Is there a victim of this crime? There are indeed victims of this crime. For one thing, I mean, the petitioner took the job away from someone who actually tried to use the immigration laws legally, as well as other citizens. She also exposed her employer to potential liability. It is like the employer would have been subject to civil penalties for hiring aliens who are not authorized to work. The employer was also obligated to pay into the Social Security Fund payments on miscellaneous that he should not have had to make. So my understanding is the employer pays taxes, like on his employees. One hopes. One hopes, but in any counterfactual, the employer would pay those same taxes, correct? But, I mean... So if this is a serious crime, why... For legal employees, Your Honor, yes, yes. If this is a serious crime, why is the punishment so light? Well, this particular punishment was light, but, I mean, the potential punishment, yes. Why is the punishment so light if this is a serious crime? Well, I mean, I don't know what was going through the district judge's mind, but I can only guess that he may have felt sorry for the petitioner. That's my best guess. I don't believe there was a transcript in the district judge's reasoning. But, yeah, there are petitioners less blameless than the alien here. In the Fifth Circuit, the Hyder case, the alien in that case came to America when he was a young boy. He grew up, and a relative gave him a fake Social Security number that he thought was valid, and he used that to get work, having no idea that it was fake. It turned out to be fake, and he was brought in front of a removal proceeding to assault cancellation, and he claimed he had entirely good faith, and the Fifth Circuit says it does not matter. Good faith does not matter. The conduct wasn't... I'm sorry, not the conduct. The offense was inherently... Well, that sounds absurd, doesn't it, to you? I mean, that sounds... Look, would you give me an example of a... Now that you, having backed away from an opposition, give me an example of a felony that is not a crime of moral turpitude. Don't say jaywalking, because jaywalking is not a felony. Don't say jaywalking, okay, sure. All right, okay, felony, felony. Felony, okay, there's murder, there's securities fraud, other felonies. I'm trying, really, I'm trying, so... The problem is most are. Well, give me an example of one that isn't. Otherwise, the notion of moral turpitude is doing absolutely no work. I understand your honest point, so... E, felony, I think, mislabeling... Off the top of my head, Your Honor, I cannot do it. But that's not, I would not... Please don't think that such felonies do not exist, just because I can't come up with one right now. That's fine. So as for Judge Hamilton, as for Silver Trevino, I will direct Your Honor to a footnote 3 of the Attorney General's decision, where the Attorney General makes it quite clear that his revised decision is not intended to alter the substantive board decisions that hold that involving a scienter element do not result in the crime of moral turpitude. I would submit that if this court were to remand, for whatever reason, we do not think remand is appropriate at all, that the result would be the same even under the new Silver Trevino decision. Okay, well, thank you very much, Mr. Stanton. Thank you, Your Honor. And Ms. Koberly, you have a little more time, if you'd like. Thank you, Your Honor. The issue in a case like this is not whether there's a possibility of harm to someone or a possibility that a conviction under a particular statute might be serious or might bring a serious penalty. It's whether we can say that the convicted conduct is necessarily inherently vile, and we plainly can't here. And this definition that the government has been using of moral turpitude has, after all these years, remained extremely elusive. I understand that repeated DUIs are not turpitudinous, but driving under a suspended sentence is turpitudinous because it involves somehow an intent to deceive. And that's a distinction that we have to clear up, this idea that intent to deceive is always turpitudinous. The only way one could conclude that the offense in this case involves moral turpitude is if the court were willing to say that every single instance of intent to deceive, no matter how benign the purpose, no matter how, frankly, morally salutary the purpose, as it is here, is necessarily shocking to the conscience. And I submit that neither the court's authorities nor the board's authorities nor the public sentiment about what is or isn't morally shocking would support that kind of result. Okay, well, thank you very much, Ms. Coberly and Mr. Stanton.